# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BRITTANY ELAINE DUTY,**

          **Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

          **Defendant.**

**Case No. 2:17-cv-445
Judge George C. Smith
Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

Plaintiff, Brittany Elaine Duty ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Child's Insurance and Supplemental Security Income benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (Doc. 15), the Commissioner's Memorandum in Opposition (Doc. 29), Plaintiff's Reply (Doc. 21), and the administrative record (Docs. 12–14). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner of Social Security's decision.

## I.  BACKGROUND

Plaintiff protectively filed her applications for Child's Insurance Benefits and Supplemental Security Income benefits on September 2, 2011. Plaintiff's applications were denied initially and upon reconsideration. (Administrative Record ("R.") 108–10, 150–52). In both applications, Plaintiff alleges a disability onset date of November 6, 2008. Plaintiff, represented

by counsel, had her first hearing before Administrative Law Judge Thomas Wang ("ALJ") on July 16, 2013. Plaintiff amended her alleged onset date to January 29, 2010. The ALJ issued an unfavorable decision on August 23, 2013. (R. 165–97). The Appeals Council granted review of the decision and issued an unfavorable decision on March 19, 2015. (*Id.* at 1–9). Plaintiff filed an appeal in the Southern District of Ohio, and the parties filed a joint motion to remand pursuant to sentence four of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further administrative proceedings. (*Id.* at 890–91).

A second hearing was held before the ALJ initially on June 10, 2016, but was continued until January 11, 2017, so that Plaintiff could attend a consultative examination. (R. 820). On March 22, 2017, the ALJ issued his decision denying Plaintiff's request for benefits. (*Id.* at 820–47). Plaintiff bypassed written exceptions, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed this action for judicial review on May 23, 2017.

In her Statement of Errors, Plaintiff raises two issues. (Doc. 15, Pl.'s Statement of Errors). Plaintiff first contends that the ALJ failed to properly evaluate her intellectual impairments under the Listing 12.05(B) because he improperly rejected her IQ scores. (*Id.* at 13–17). Plaintiff also maintains that the ALJ failed to properly evaluate her reports of pain under Social Security Ruling ("SSR") 16-3p. (*Id.* at 17–21).

## II.    THE ALJ'S DECISION

The ALJ issued his decision on March 22, 2017, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act since January 29, 2010, the alleged onset date, through her date last insured. (R. 822). The ALJ determined that Plaintiff had not attained the age of twenty-two as of January 29, 2010, her alleged onset date, *see* 20 C.F.R. 303.350(a)(5), nor had she engaged in substantial gainful activity since January 29, 2010. (*Id.* at 826). At step

two of the sequential evaluation process,[1] the ALJ concluded that Plaintiff had the following severe impairments: "degenerative disc and joint disease of the spine, status post lumbar spine surgical intervention; morbid obesity; an anxiety disorder; a depressive disorder with dysthymic syndrome; borderline intellectual functioning with a learning disorder; and a history of substance abuse." (*Id*). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work except the claimant could stand/and or walk for 15 minutes at a time for 2 hours total during an 8-hour workday. She could sit for 2 hours at a time for a total of 6 hours during an 8-hour workday. She would be precluded from climbing ladders, ropes, and scaffolds, but could occasionally climb ramps and stairs and occasionally balance. The claimant would be limited to frequent stooping, kneeling, crouching, and crawling. She should avoid exposure to unprotected heights. The claimant could perform goal based production, where work is measured by the end result, not pace work. She could perform simple, routine, and repetitive tasks. The work allowed off task would be five (5) percent of the workday. She would require a low stress

---

[1]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

job, defined as no decision making and would require only occasional changes in work setting.  Further, the claimant should avoid interaction with the public.

(R. 831).

Relying on a vocational expert's testimony, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an assembler, sorter, and inspector.  (R. 845–46).  The ALJ therefore determined that Plaintiff was not under a disability from January 29, 2010, through the date of the decision.  (*Id.* at 846).

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v.*

4

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

### A. Listing 12.05(B)

As set forth above, in her first contention of error, Plaintiff challenges the ALJ's evaluation of her intellectual functioning under Listing 12.05(B).

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. 20 C.F.R. 404 Subpt. P, App. 1 § 12.05. *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *cf. McClellan v. Astrue*, 804 F.Supp.2d 678, 682 (E.D. Tenn. 2011) ("[A] qualifying IQ score is not enough to satisfy Listing 12.05[;] . . . a claimant must also meet the elements of the diagnostic description.").

The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost establishes a disability" under Listing).

**1.      Listing 12.05(B) criteria**

Here, Plaintiff alleges that the ALJ improperly applied Listing 12.05[2] for an Intellectual

Disorder at step three of the process.  At issue in this case is part B of Listing 12.05, which provides

that an intellectual disorder meets the listing requirements when all three of the following criteria

are satisfied:

B.  Satisfied by 1, 2, and 3 (see 12.00H):

    1.  Significantly subaverage general intellectual functioning evidenced by a or b:

        a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

        b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

    2.  Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

        a.  Understand, remember, or apply information (see 12.00E1); or

        b.  Interact with others (see 12.00E2); or

        c.  Concentrate, persist, or maintain pace (see 12.00E3); or

        d.  Adapt or manage oneself (see 12.00E4); and

    3.  The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404 App. 1 § 12.05(A)–(B).

---

[2]Effective January 17, 2017, the Social Security agency revised the criteria for evaluating mental disorders and changed the requirements of Listing 12.05.  *See* 81 F.R. 66137 (Sept. 26, 2016); 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The ALJ issued his opinion on March 23, 2017, and applied the current version of Listing 12.05.

### 2.    Application

The ALJ applied Listing 12.05(B) at step three and concluded that there was insufficient evidence that Plaintiff's mental impairments had begun prior to age 22.  (R. 830).  What the ALJ failed to realize, however, is that one of the IQ tests was conducted when Plaintiff was 18 years old (thus *prior to* the age of 22), not at age 25 as the ALJ had concluded.  The second IQ test and intellectual evaluation, performed by Lee E. Roach, PH.D ("Dr. Roach"), was completed on April 14, 2007.  (*Compare* "test date" headings on R. 796 *with* 798).  Consistently, Dr. Roach's report states that "claimant is an 18 year old female" and a "junior at West Muskingum High School." (*Id.* at 797–98).  The ALJ's confusion as to the test date is understandable given the YY/MM/DD format used on the first page of Dr. Roach's report.  (*See* R. 796).  But the ALJ's mistake about the date of the IQ test renders his conclusion that Plaintiff did not demonstrate onset of her mental impairment prior to age 22 erroneous.

However, the Court concludes this error was harmless because the ALJ's opinion that Plaintiff does not have moderate or marked limitations in two areas of adaptive functioning under Listing 12.05(B)(2)'s requirements is supported by substantial evidence.

The only two areas of adaptive functioning in which Plaintiff asserts marked limitations are "understand, remember, or apply information" (Paragraph B1) and "interact with others" (Paragraph B2).  The record does support a marked limitation under Paragraph B1, as recorded by consultative examiner Dr. Swearingen, to whom the ALJ accorded "significant weight."  (R. 844). However, the ALJ found that Plaintiff was not markedly limited in interacting with others under Paragraph B2.  This conclusion was supported by substantial evidence.

Because Plaintiff indicates she "had no work history because she was busy raising her children" (R. 583) and not due to her mental impairments, the absence of work history itself does not imply any work-related social limitations.  In fact, at least two of Plaintiff's consultative

examiners noted that her lack of work history made it difficult or impossible to assess her work-related social functioning. (R. 585 (Mr. Sours); R. 1129 (Dr. Swearingen)). In the absence of evidence of work-related social limitations, Plaintiff faces an uphill battle. *Watson v. Astrue*, No. 5:11-cv-717, 2012 WL 699788, at *5 (N.D. Ohio Mar. 1, 2012) ("If anything, the dearth of opinions cuts in the Commissioner's favor, as, in the Sixth Circuit, it is well established that . . . the claimant—and not the ALJ—has the burden to produce evidence in support of a disability claim.").

Further, the ALJ reviewed the evidence of Plaintiff's ability to interact with others in non-work settings and did not find her to be markedly limited. Specifically, the ALJ noted that Plaintiff "had some issues dealing with others that were not already her friends or family members" (R. 828) and "reported she was not getting along with other students [when she was in school] and a history of fighting." (R. 836, citing R. 1220). At a consultative examination in August 2016, the ALJ noted Plaintiff "had no problems with people in authority" and although "at times people irritate her, [ ] she endorsed having friends and admitted she has no problems getting along with her friends." (R. 838, citing R. 1221). Plaintiff further testified at the hearing that she "rel[ies] upon her friends and mother to perform [household] chores when they come visit her." (R. 841, citing R. 869).

In terms of the opinion evidence, the ALJ afforded "some weight" to consultative examiner, Mr. Sours, who opined in 2011 that Plaintiff "would have issues with adapting to workplace pressures" (R. 843, citing R. 585) and "would have the ability to maintain appropriate behavior with co-workers and supervisors in a work setting," although Mr. Sours described the latter opinion as "highly speculative" due to Plaintiff's lack of work history. (R. 585). The ALJ

also afforded "significant weight" to Dr. Roach's assessment in 2007 that Plaintiff was "moderately impaired in her relationships with others." (R. 843, citing R. 803).

Finally, the ALJ accorded "significant weight" to the opinion of Dr. Swearingen, who performed a consultative examination in 2016. Although Dr. Swearingen found Plaintiff had marked limitation in her ability to interact with the public, he was unable to evaluate the other components of interaction with others under Paragraph B2 (interacting with supervisors, interacting with co-workers, and responding appropriately to usual work situations and changes in a routine work setting) due to Plaintiff's complete lack of work history. Notably, unlike Paragraphs B1, B3, and B4, the ALJ was not required to apply the greatest degree of limitation of any part of the "interacting with others" definition to that whole area of mental functioning. *See* § 12.00(F)(3)(f). Thus, even though the ALJ gave Dr. Swearingen's opinion great weight, Dr. Swearingen's finding that Plaintiff had marked limitation in her ability to interact with the public did not require the ALJ to find that she had had overall marked limitation in interacting with others.

Moreover, it remains Plaintiff's burden to establish that she has met all listing criteria. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999). Plaintiff argues that she has a marked limitation in interacting with others as evidenced by her irritation with, and desire to give up on, Dr. Swearingen's testing. (Doc. 15, Pl.'s Statement of Errors at 17, citing R. 1223). She also relies on Dr. Swearingen's statement that Plaintiff "has a history of disrupted interpersonal relationships" and "had little to no interaction in today's interview." (*Id.*, citing R. 1224). Plaintiff is correct that keeping interactions free of irritability and initiating and sustaining conversation are relevant to whether she is limited in her interactions with others under Paragraph B2. However, Plaintiff's interactions with Dr. Swearingen on a single day (a day on which Dr. Swearingen described

Plaintiff's overall effort in the evaluation as "poor") must be evaluated in the context of the record as a whole.

While the record unquestionably reflects some level of Paragraph B2 limitation (which the ALJ accounted for in the RFC by stating she should avoid interaction with the public), the record does not clearly establish that Plaintiff was markedly limited. "This is the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-CV-01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (N.D. Ohio May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The Court is therefore satisfied that the ALJ's conclusion that Plaintiff is only moderately limited in her ability to interact with others was supported by substantial evidence.

**B.     ALJ's evaluation of Plaintiff's pain symptoms**

**1.     Standard for evaluating Plaintiff's reported symptoms**

For decisions made on or after March 28, 2016, the ALJ will evaluate a plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. *See id.* at *11 ("In evaluating an individual's symptoms, our

adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.").

Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of Plaintiff's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the Court concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247. A claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Accordingly, "subjective complaints may support a finding of disability only where

objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *report and recommendation adopted*, 2011

WL 3843703 (N.D. Ohio Aug. 30, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

### 2.    Application

The ALJ thoroughly reviewed the evidence in the record related to Plaintiff's back injuries and resulting pain when explaining how he arrived at Plaintiff's RFC.  (R. 831–835, 839–43, 844–45).  He cited to various portions of the record that consistently showed that on visits where she reported significant or extreme pain, Plaintiff could still ambulate without difficulty, could maintain her balance, had 5/5 strength in her extremities, and showed only some diminished range of leg motion.  (R. 833–34).  He ultimately noted that, while Plaintiff has medically determinable impairments that could reasonably cause some symptoms and limitations, the record showed that Plaintiff's testimony regarding the extent of such symptoms and limitations is not fully supported by the evidence.  (R. 845).

However, the ALJ did not completely dismiss Plaintiff's reported pain symptoms; rather, the ALJ took Plaintiff's pain symptoms into account in her RFC to the extent that they are consistent with the record as a whole.  (*Id*).  Thus, the RFC stated that Plaintiff could perform only light exertional level work, noting she could stand/and or walk for 15 minutes at a time for 2 hours total during an 8-hour workday; could sit for 2 hours at a time for a total of 6 hours during an 8-hour workday; would be precluded from climbing ladders, ropes, and scaffolds, but could occasionally climb ramps and stairs and occasionally balance; would be limited to frequent stooping, kneeling, crouching, and crawling; and should avoid exposure to unprotected heights.  (R. 831, 835).

Plaintiff contends that the ALJ did not properly undertake the two-step analysis outlined above in arriving at her RFC.  Specifically, she objects to several observations the ALJ made regarding the credibility of her reported pain symptoms.  However, Plaintiff does not specify how

the RFC should differ to account for her pain symptoms as reported. She does not assert that further restrictions are warranted; she merely requests "remand[ ] for a proper consideration of Plaintiff's pain and its limiting effects." (Doc. 15, Pl.'s Statement of Errors at 21).

Nor does Plaintiff identify any objective evidence that would support additional restrictions in her RFC. The record contains only one opinion as to Plaintiff's physical capacity to work: Plaintiff's chiropractor, Dr. Siegler, opined that Plaintiff was not able to work at all due to her pain symptoms. (R. 842, citing R. 577–78). However, the ALJ discounted Dr. Siegler's evaluation because, as a chiropractor, he is not an acceptable medical source under the Social Security Rules and Regulations, and also because his opinion was not consistent with the remainder of the record. (R. 842). Plaintiff does not challenge the ALJ's rejection of Dr. Siegler's opinion in her Statement of Errors.

Plaintiff does identify some valid errors in the ALJ's reasoning. For instance, the ALJ suggested Plaintiff testified inconsistently at the hearing:

> [Plaintiff] testified that she has anxiety and is always by herself, noting her friends do not come over. However, she testified prior to making that statement, that she does not perform her household chores, relying up on her friends and mother to perform such chores when they come visit her.

(R. 841). However, as Plaintiff correctly points out, Plaintiff's actual hearing testimony was that "[she is] always by [her]self, other than when [her] friends come over," which is entirely consistent with the other portions of her testimony alluded to by the ALJ. (R. 872). Additionally, the ALJ concluded that Plaintiff's use of alcohol and marijuana had interacted with her prescribed pain medications, thereby decreasing the pain medication's efficacy. (R. 840). However, Plaintiff again correctly points out that this conclusion is not supported by citations to the medical evidence and the Court is unable to locate any record in which any medical provider reached this conclusion.

But despite these errors by the ALJ, the Court finds that Plaintiff has not carried her burden of establishing the need for greater restrictions in her RFC. These errors in the ALJ's credibility analysis do not alter the complete lack of work restrictions recommended by acceptable medical sources in the record. Courts in the Sixth Circuit apply the harmless error standard when reviewing an ALJ's credibility determination. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Thus, an adverse credibility finding based partially on invalid reasons is deemed harmless, and does not require remand, if the ALJ also provided other substantial evidence in support of his credibility determination. *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman*, 693 F.3d at 714). The Court finds this to be the case here.

## V.     DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner of Social Security's decision.

**IT IS SO ORDERED.**

  */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**